FILED
2015 Mar-02  PM 01:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **MIMEDX GROUP, INC.** | **CASE NO.:** |
| **Plaintiff** | |
| -vs.- | **COMPLAINT** |
| **NUTECH MEDICAL, INC. and DCI DONOR SERVICES, INC.** | **(JURY TRIAL DEMANDED)** |
| **Defendants.** | |

Plaintiff MiMedx Group, Inc. ("MiMedx" or "Plaintiff") files this Complaint against Defendants Nutech Medical, Inc. ("Nutech") and DCI Donor Services, Inc., ("DCI") (collectively, "Defendants") and, in support thereof, alleges as follows:

### NATURE AND BASIS OF ACTION

1.     This is a civil action arising out of Defendants' infringement of United States Patent Nos. 8,597,687 and 8,709,494 (collectively, the "Patents-in-Suit"). This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*

2.     This action also arises out of Defendant Nutech's knowing and willful false and misleading representations about NuShield™ products. Defendant Nutech's actions constitute federal false advertising and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); common law unfair competition, and tortious interference with prospective economic advantage.

3.      MiMedx seeks, among other things, permanent injunctive relief, monetary damages, punitive damages, and recovery of MiMedx's costs and reasonable attorneys' fees incurred in connection with this action.

**PARTIES**

4.      Plaintiff MiMedx is a corporation organized and existing under the laws of the State of Florida.  MiMedx is registered to do business in the State of Georgia and maintains its headquarters and principal place of business at 1775 West Oak Commons Ct., Marietta, Georgia 30062.

5.      Upon information and belief, Nutech Medical, Inc. is an Alabama corporation with its principal place of business at 2641 Rocky Ridge Lane, Birmingham, Alabama, 35216.

6.      Upon information and belief, Nutech is a manufacturer and distributor of healthcare supplies and is in the business of, among other things, marketing, distributing, offering to sell, and selling its tissue graft product NuShield Spine™ ("NuShield™") in the United States.

7.      Upon information and belief, DCI has its principal place of business at 1600 Hayes Street, Suite 300, Nashville, Tennessee, 37203.

8.      Upon information and belief, DCI is in the business of processing donor tissue into allografts for implantation in spine, sports medicine, orthopedic, and other surgeries in the United States.

9.      Upon information and belief, the tissue for NuShield™ products is processed by DCI, and then the product is made and distributed by NuTech.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the United States Patent Act, 35 U.S.C. §§ 100, *et seq*. and the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.

11.     This Court has jurisdiction over MiMedx's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

12.     This Court has personal jurisdiction over the Defendants because, upon information and belief, Defendants transact business within the State of Alabama including, but not limited to, contracting to supply goods or services in the State of Alabama, engaging in acts outside the State of Alabama causing injury within the State, and engaging in tortious acts within the State of Alabama.  Defendants have purposefully and voluntarily placed their products, and/or caused their products to be placed, into the stream of commerce with the expectation that they will be purchased by consumers in this District.  As such, Defendants have established minimum contacts with the forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

13.     Upon information and belief, this Court has personal jurisdiction over Defendant Nutech because it is incorporated and maintains its principal place of business in this State.  In addition, Nutech conducts business throughout the United States, including within this judicial district.

14.     Upon information and belief, this Court has personal jurisdiction over Defendant DCI because it has continuous and systematic contacts with this State.  DCI (1) intentionally markets and provides its services and processed tissues to residents of this

State; (2) entered into an agreement to process tissue for Nutech, a resident of this state; and (3) enjoys substantial revenues from sales of its products and services in this State.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400.

## BACKGROUND

### I.     MiMEDX AND ITS PRODUCTS

16.     MiMedx develops, manufactures and markets innovative and unique regenerative bioactive products and bioimplants processed from placental human amniotic membrane.

17.     MiMedx has been manufacturing and distributing its innovative and unique bioactive healing products and devices for tissue regeneration since at least 2008.

18.     In 2011, MiMedx acquired Surgical Biologics LLC, expanding MiMedx's business by adding allografts and other products processed from human amniotic membranes to MiMedx's existing medical device product lines.  MiMedx has distributed over 225,000 amniotic tissue grafts to patients in need thereof, and achieved significant clinical outcomes in multiple therapeutic areas including, but not limited to, the fields of ophthalmology, spinal surgery, chronic wound treatment, dental treatment, orthopedic surgery, sports medicine, and urology.

19.     Over the years, MiMedx has spent millions of dollars researching and developing its proprietary placental tissue-based products and processes, and devotes significant financial resources each year in marketing as well.

20.     Because of the substantial expertise, investment of time, effort and financial resources required to bring new regenerative bioactive healing products and processes to the

4

market, MiMedx has sought and secured an extensive patent portfolio related to its innovative tissue technology and products.

21.     MiMedx has also conducted extensive clinical and laboratory tests on its tissue graft products and is dedicated to providing safe, superior allografts.

22.     MiMedx has implemented strict quality controls on the tissue it uses.  Such controls include the implementation of a quality management system in compliance with both the Food and Drug Administration and the American Association of Tissue Banks.  Using this quality management system, MiMedx maintains strict control over each step of the manufacturing process.

23.     MiMedx has also established guidelines for donor eligibility, screening and testing.  All donor records and test results are reviewed by MiMedx before the release of the tissue.  Only tissues that are deemed suitable for transplant are released for use.

24.     Because of MiMedx's commitment to the development and testing of its products, MiMedx has become acclaimed for its novel placental tissue-based products. Indeed, MiMedx's products are some of the most well-known and well-respected in the industry.

25.     Over the years, MiMedx has also diligently expanded and built its trade name and trademarks with respect to its placental tissue-based products, such that the commercial market has come to identify MiMedx's product lines with MiMedx.

26.     MiMedx's product lines include EpiFix® and AmnioFix®, which are tissue grafts processed from human amniotic membrane that is derived from donated placentas using MiMedx's proprietary technology.  MiMedx processes the human amniotic membrane

through a proprietary system called the Purion process to produce a safe and effective tissue product, which is commonly referred to as an "allograft."  MiMedx's products are utilized in a vast number of clinical treatments including, but not limited to, advanced wound care, orthopedic/spine surgery, and sports medicine applications.  In each of these areas, and many more, MiMedx's products help to reduce inflammation, enhance healing and reduce scar tissue formation, among other benefits.

## II.    MIMEDX'S PATENTED PURION PROCESS

27.    MiMedx has an extensive patent portfolio including the Patents-in-Suit covering placental tissue-based products.  These patents cover the Purion process for creating allografts.

28.    On December 3, 2013, the USPTO duly and legally issued United States Patent No. 8,597,687 (the "'687 patent"), entitled "Methods for Determining the Orientation of a Tissue Graft."  The '687 patent names John Daniel as an inventor.

29.    The '687 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '687 patent and pursue any and all causes of actions and remedies, either legal and/or equitable, related thereto.  A true and correct copy of the '687 patent is attached herein as Exhibit A.

30.    On April 29, 2014, the USPTO duly and legally issued United States Patent No. 8,709,494 (the "'494 patent"), entitled "Placental Tissue Grafts."  The '494 patent names John Daniel as an inventor.

31.    The '494 patent has been assigned to MiMedx, and MiMedx has standing to sue and recover damages for infringement of the '494 patent and pursue any and all causes of

actions and remedies, either legal and/or equitable, related thereto.  A true and correct copy of the '494 patent is attached herein as Exhibit B.

## III.    INFRINGEMENT OF THE PATENTS-IN-SUIT BY DEFENDANTS

32.    Upon information and belief, DCI locates and screens tissue donors, as well as processes and makes tissues for allografts.

33.    Upon information and belief, DCI and Nutech entered into a supply and processing partnership through which DCI processes Nutech's NuShield™ tissue graft to be sold in the United States and in this judicial district.

34.    Upon information and belief, Nutech markets, sells, and/or offers to sell the NuShield™ product in the United States and in this judicial district.

35.    Upon information and belief, the NuShield™ product is a tissue graft product which includes an amnion membrane and a chorion membrane.

36.    Upon information and belief, the NuShield™ product has been and/or continues to have an asymmetric label on a portion of at least one side of the tissue graft to allow direct visual determination of the orientation of the tissue graft.

37.    Upon information and belief, Nutech and DCI have infringed and/or continue to infringe one or more claims of the '687 patent and the '494 patent, by manufacturing, using, selling and/or offering the NuShield™  product for sale in the United States and in this judicial district.

38.    Upon information and belief, Defendants have been on actual notice of the patents-in-suit.

39.     Additionally, upon information and belief, Defendants have had constructive knowledge of certain of the Patents-in-Suit at least by virtue of the identification of the Patents-in-Suit on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

40.     Upon information and belief, Defendants have acted and continue to act without a reasonable basis for believing that they would not be liable for infringing the relevant Patents-in-Suit.

IV.     **DEFENDANT NUTECH'S FALSE AND MISLEADING STATEMENTS**

41.     Defendants are in no way affiliated with Plaintiff or any of its related entities.

42.     Defendant Nutech and Plaintiff are direct competitors in the wound biologics market as well as the spine and orthopedics markets.

43.     Upon information and belief, Defendant Nutech has made and continues to make false and misleading statements regarding the nature and efficacy of the NuShield™ product on websites and in corresponding respective materials distributed to third parties, including customers and/or prospective customers.

44.     Upon information and belief, Nutech has made and continues to make false and misleading descriptions and representations of fact concerning NuShield™ on its www.nushield.org website and in other promotional materials.

45.     Nutech's website states that NuShield™ is processed by a "Patent-pending Purion Process."   Upon information and belief, NuShield™ is not processed based on patented technology, owned or licensed by Nutech.   Indeed, upon information and belief, Nutech neither owns nor has a license to any patented technologies associated with or

covering the processing of its NuShield™ product.  In fact, the patented Purion process is owned by MiMedx.

46.     Nutech's website falsely and misleadingly claims that "NuShield is terminally sterilized with the Purion Process and E beam radiation."   Upon information and belief, NuShield™ is not processed using the Purion Process.

47.     In addition, Nutech's website states that NuShield™ has an "embossment reading SB from left to right on applied tissue."   "SB" stands for Surgical Biologics, MiMedx's predecessor.  The NuShield website includes a picture of the NuShield™ product containing the "SB" embossment as depicted below.



However, NuShield™ is not processed by Surgical Biologics.

48.     Upon information and belief, NuShield™ is currently processed by DCI Donor Services Tissue Bank in Nashville, Tennessee.  DCI Donor Services Tissue Bank is in no way affiliated with Plaintiff, or any of its related entities.

49.     Plaintiff has repeatedly attempted to curb Nutech's false statements.   On October 2, 2014, Plaintiff sent Nutech a letter demanding that it remove all references to Plaintiff's EpiFix® product from its website.  Additionally, on November 11, 2014, Plaintiff

sent a letter to Defendant Nutech demanding that Nutech remove all photos containing an "SB" embossment from its website.  Plaintiff also demanded that Nutech cease holding itself out as a distributor of PURION processed tissue products, and otherwise cease its usage of all intellectual property owned by MiMedx.  Defendant Nutech never responded to Plaintiffs letter, and to date, has not ceased its false and misleading statements.

50.     Upon information and belief, Nutech's false and misleading statements go beyond those made on its website and promotional materials.

51.     Upon information and belief, through at least the materials accessible on Nutech's website and through materials distributed to customers and/or prospective customers, Nutech has marketed its NuShield™ product using these false statements in an effort to induce customers and/or prospective customers to believe that the NuShield™ product has certain claimed attributes, when it does not.

52.     Upon information and belief, Nutech has made these false and misleading statements knowingly, with an intention to deceive Nutech's customers and/or prospective customers into believing that these statements are true, when they are not.

53.     Upon information and belief, Nutech performed the aforementioned acts globally, as well as within the United States and in this judicial district.

54.     These false and misleading statements are, by their very nature, material to the purchasing decisions of Nutech's and MiMedx's customers.

55.     These false and misleading statements and representations cause injury to MiMedx, the leading processor, marketer, and distributor of human amniotic tissue in the

United States.  Such injury includes, upon information and belief, loss of sales to existing and prospective MiMedx customers.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 8,597,687 BY NUTECH

56.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 55 above, inclusive.

57.    Upon information and belief, Nutech has infringed and/or continues to infringe one or more claims of the '687 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing NuShield™ product.

58.    Upon information and belief, Nutech directly and through authorized agents, sells and offers for sale within the United States the infringing NuShield™ product to hospitals, physicians, clinics and wound care centers throughout the United States

59.    MiMedx has been damaged by Nutech's past and continuing infringement of the '687 patent in an amount to be determined at trial.

60.    MiMedx has been and continues to be irreparably injured by Nutech's past and continuing infringement of the '687 patent, and Nutech's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

61.    MiMedx is entitled to monetary damages from Nutech's unauthorized infringement in an amount to be determined at trial.

62.    Upon information and belief, Nutech has had constructive knowledge of the '687 patent at least by virtue of the identification of the '687 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing

www.mimedx.com/patents as well as Plaintiffs providing Nutech actual notice of the '687 patent.

63.     Upon information and belief, Nutech acted despite an objectively high likelihood that its actions constituted infringement of the '687 patent.  Upon information and belief, Nutech's risk of intentionally infringing the '687 patent was either known or so obvious that it should have been known to Nutech.  Accordingly, Nutech's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '687 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

### COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 8,597,687 BY DCI

64.     Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 63 above, inclusive.

65.     Upon information and belief, DCI has infringed and/or continues to infringe one or more claims of the '687 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Nushield™ product.

66.     MiMedx has been damaged by DCI's past and continuing infringement of the '687 patent in an amount to be determined at trial.

67.     MiMedx has been and continues to be irreparably injured by DCI's past and continuing infringement of the '687 patent, and DCI's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

68.     MiMedx is entitled to monetary damages from DCI's unauthorized infringement in an amount to be determined at trial.

69.     Upon information and belief, DCI has had constructive knowledge of the '687 patent at least by virtue of the identification of the '687 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

70.     Upon information and belief, DCI acted despite an objectively high likelihood that its actions constituted infringement of the '687 patent.  Upon information and belief, DCI's risk of intentionally infringing the '687 patent was either known or so obvious that it should have been known to DCI.  Accordingly, DCI's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '687 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 8,709,494 BY NUTECH

71.     Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 70 above, inclusive.

72.     Upon information and belief, Nutech has infringed and/or continues to infringe one or more claims of the '494 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing NuShield™ product.

73.    Upon information and belief, Nutech directly and through authorized agents, sells and offers for sale within the United States the infringing NuShield™ product to hospitals, physicians, clinics and wound care centers throughout the United States

74.    MiMedx has been damaged by Nutech's past and continuing infringement of the '494 patent in an amount to be determined at trial.

75.    MiMedx has been and continues to be irreparably injured by Nutech's past and continuing infringement of the '494 patent, and Nutech's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

76.    MiMedx is entitled to monetary damages from Nutech's unauthorized infringement in an amount to be determined at trial.

77.    Upon information and belief, Nutech has had constructive knowledge of the '494 patent at least by virtue of the identification of the '494 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents as well Plaintiffs providing Nutech actual notice of the '494 patent.

78.    Upon information and belief, Nutech acted despite an objectively high likelihood that its actions constituted infringement of the '494 patent.  Upon information and belief, Nutech's risk of intentionally infringing the '494 patent was either known or so obvious that it should have been known to Nutech.  Accordingly, Nutech's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '494 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant

to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 8,709,494 BY DCI

79.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 78 above, inclusive.

80.    Upon information and belief, DCI has infringed and/or continues to infringe one or more claims of the '494 patent, either literally or under the doctrine of equivalents, by manufacturing, using, selling and/or offering for sale in the United States the infringing Nushield™ product.

81.    MiMedx has been damaged by DCI's past and continuing infringement of the '687 patent in an amount to be determined at trial.

82.    MiMedx has been and continues to be irreparably injured by DCI's past and continuing infringement of the '494 patent, and DCI's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

83.    MiMedx is entitled to monetary damages from DCI's unauthorized infringement in an amount to be determined at trial.

84.    Upon information and belief, DCI has had constructive knowledge of the '494 patent at least by virtue of the identification of the '494 patent on the AminoFix® and EpiFix® product labels, package information and/or marketing materials by referencing www.mimedx.com/patents.

85.    Upon information and belief, DCI acted despite an objectively high likelihood that its actions constituted infringement of the '494 patent.  Upon information and belief,

DCI's risk of intentionally infringing the '494 patent was either known or so obvious that it should have been known to DCI.  Accordingly, DCI's infringement has been and continues to be deliberate, willful, intentional, and with knowledge of the existence of the '494 patent, and MiMedx accordingly is entitled to recover enhanced damages pursuant to 35 U.S.C. § 284, as well as its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285.

**COUNT V**
**FALSE ADVERTISING IN VIOLATION OF SECTION 43(a)(1)(B)**
**OF THE LANHAM ACT, 15 U.S.C. § 1125 BY NUTECH**

86.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 85 above, inclusive.

87.    Nutech's aforementioned statements made on at least its website and in its promotional materials are materially false statements or misleading descriptions of fact that are likely to cause consumer confusion, mistake or deception as to its NuShield™ product.

88.    Such material misrepresentations are the type upon which customers or prospective customers have relied and will rely.  Nutech's actions therefore mislead and harm customers and consumers as well as damage MiMedx's sales, good name and reputation in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

89.    Upon information and belief, Nutech had and has knowledge that the statements regarding NuShield™ referenced herein are false and misleading, and therefore the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

90.    The aforesaid acts of Nutech have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

91.     The aforesaid acts of Nutech have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT VI
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST NUTECH

92.     Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 91 above, inclusive.

93.     MiMedx had a reasonable expectation of economic benefit or advantage through at least the expiration date of the Patents-in-Suit, including but not limited to monetary and economic benefit from the exclusive sale of its tissue grafts as processed by its Purion process.

94.     Nutech had actual knowledge that MiMedx expected to receive substantial monetary and economic benefit from the sales of its AmnioFix® and EpiFix® products.

95.     Upon information and belief, through its direct targeting of, and false statements to, MiMedx's customers, Nutech has wrongfully and without justification interfered with the economic benefit that MiMedx should have received.

96.     Had Nutech not specifically targeted MiMedx's customers, MiMedx would have realized greater sales and profits for its AmnioFix® and EpiFix® products.

97.     MiMedx has and will suffer harm due to Nutech's interference with MiMedx's customers and prospective economic advantage, including lost profits, irretrievable loss of market share and customers, and price erosion of its AmnioFix® and EpiFix® products.

## COUNT VII
## FEDERAL UNFAIR COMPETITION IN VIOLATION OF SECTION 43(a)(1)(A) OF THE LANHAM ACT, 15 U.S.C. § 1125 BY NUTECH

98.    Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 97 above, inclusive.

99.    Nutech's aforementioned statements made on at least its website, in its promotional and sales materials, and to MiMedx's customers are materially false statements or misleading descriptions of fact that are likely to cause consumer confusion, mistake or deception as to the affiliation, connection or association of Nutech's NuShield™ products.

100.   Nutech, therefore, has falsely promoted NuShield™ in interstate commerce so as to cause confusion, mistake or deception amongst the public as to the affiliation, connection, approval, origin and sponsorship of its product.

101.   Such false promotions are the type upon which customers and/or prospective customers have, and will, rely.  The aforesaid acts have caused, and are likely to continue to cause injury to the public and to MiMedx's business and result in Nutech unfairly competing with MiMedx.

102.   Upon information and belief, Nutech had and has knowledge that the statements regarding NuShield™ referenced herein are false and misleading, and likely to cause confusion, and therefore the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

103.   The aforesaid acts of Nutech have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

18

104.   The aforesaid acts of Nutech have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## COUNT VIII
## COMMON LAW UNFAIR COMPETITION BY NUTECH

105.   Plaintiff incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 105 above, inclusive.

106.   Nutech has made false statements to the public and its existing and prospective customers with the intent of deceiving and misleading the public as to the quality and nature of its product.

107.   The aforesaid acts have enabled Nutech to misappropriate the labors and expenditures of MiMedx in developing the market for wound biologics products as well as the spine and orthopedics market in violation of Alabama common law.

108.   Additionally, the aforesaid acts have caused, and are likely to continue to cause injury to the public and to MiMedx's business reputation, and result in Nutech unfairly competing with MiMedx.

109.   The aforesaid acts were undertaken willfully and deliberately.

110.   The aforesaid acts of Nutech have caused, and will continue to cause, damage to MiMedx in an amount to be determined at trial.

111.   The aforesaid acts of Nutech have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to MiMedx for which MiMedx has no adequate remedy at law.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

A.      Enter judgment that Defendants have infringed one or more of the claims of the '687 patent and that Defendants' infringement has been willful;

B.      Enter judgment that Defendants have infringed one or more of the claims of the '494 patent and that Defendants' infringement has been willful;

C.      Award Plaintiff a permanent injunction enjoining Defendants from continued infringement;

D.      Award Plaintiff damages in an amount to be proved at trial that will adequately compensate Plaintiff for Defendants' infringement, but under no circumstances an amount less than a reasonable royalty, as authorized by 35 U.S.C. § 284;

E.      Increase the damages sustained by Plaintiff up to three times the amount of their actual damages, as authorized by 35 U.S.C. § 284;

F.      Award Plaintiff its attorneys' fees and other expenses of litigation pursuant to 35 U.S.C. § 285;

G.      Award Plaintiff prejudgment interest and costs pursuant to 35 U.S.C. § 284;

H.      Award Plaintiff damages in an amount to be proved at trial that will adequately compensate Plaintiff for Defendant Nutech's false representations, false descriptions, false designations of origin, deceptive trade practices and unfair competition as described above, together with appropriate interest on such damages, and in the case of damages resulting from

Defendant Nutech's violations of the Lanham Act, such damages be trebled pursuant to 15 U.S.C. § 1117;

I.      The Court order Defendant Nutech to account for and disgorge and pay to Plaintiff all gains, profits, savings, and advantages realized by Defendant Nutech from its false representations, false descriptions, false designations of origin, deceptive trade practices and unfair competition as described above, and in the case of damages resulting from Defendant Nutech's violations of the Lanham Act, such damages be trebled pursuant to 15 U.S.C. § 1117;

J.      The Court order that Defendant Nutech engage in a program of corrective advertising, satisfactory to Plaintiff, to ameliorate the false and misleading information that Defendants have promulgated; and

K.      The Court grant such other, different, and additional relief as the Court deems just and proper.

Dated: March 2, 2015                    Respectfully submitted,


                                        */s/ Jennifer Devereaux Segers*
                                         Jennifer Devereaux Segers (DEV003)

                                        HUIE, FERNAMBUCQ & STEWART, LLP
                                        Three Protective Center, Suite 200
                                        2801 Highway 280 South
                                        Birmingham, Alabama 35223-2484
                                        (205) 251-1193 Telephone
                                        (205) 251-1256 Facsimile

                                        OF COUNSEL:
                                        Deepro R. Mukerjee
                                        *(pro hac vice application pending)*
                                        Thomas J. Parker
                                        *(pro hac vice application pending)*
                                        Poopak Banky
                                        *(pro hac vice application pending)*

ALSTON & BIRD, LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9501
Fax: (212) 210-9444
deepro.mukerjee@alston.com
thomas.parker@alston.com
paki.banky@alston.com

*Attorneys for Plaintiff MiMedx Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2015, I electronically filed the above document with the Clerk of Court using CM/ECF which will send electronic notification of such filing to all registered counsel.


/s/ Jennifer Devereaux Segers
*Attorney for Plaintiff MiMedx Group, Inc.*