# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MIMEDX GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:15-CV-0369-VEH** |
| | ) | |
| **NUTECH MEDICAL, INC.** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **DCI DONOR SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff**. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This patent infringement action was initiated on March 2, 2015, by MiMedx

Group, Inc. ("MIMEDX") against Nutech Medical, Inc. ("NUTECH") and DCI

Donor Services, Inc. ("DCI"). Pending before the court are a Motion To Dismiss

(Doc. 23) filed by NUTECH on April 17, 2015, and an opposed Motion To Stay

Discovery and Rule 26 Obligations (Doc. 27) filed by NUTECH on May 5, 2015.

This case was reassigned to the undersigned on June 2, 2015. The undersigned then

entered a scheduling order regarding these pending motions. Responsive submissions

were filed and, on August 20, 2015, a four-and-a-half hour hearing was held before

---

[1] All references to page numbers of documents filed with the court are to the pagination
assigned by the court's electronic filing system.

the undersigned.[2]

MIMEDX is the owner of two patents, the '687 patent and the '494 patent. In its complaint, MIMEDX asserts that NUTECH has infringed both of these patents.[3] In its motion to dismiss, NUTECH asserts that MIMEDX's complaint is due to be dismissed under Federal Rule of Civil Procedure 12(b)(6) on the basis that each patent is invalid because each patent claims unpatentable subject matter. Having considered the complete record, including post-argument submissions, and having had the benefit of oral argument, the court concludes, for the reasons stated below, that the motion is due to be granted in part and otherwise is due to be denied. Further, the Motion To Stay is due to be denied.

## I. FACTUAL BACKGROUND

### A. The '687 Patent.

The '687 Patent is entitled "Methods fo Determining the Orientation of a Tissue Graft" and has seven claims. Claim 1 of the '687 patent is its only independent claim. All of the remaining claims depend on Claim 1.

Claim 1 reads:

---

[2] Because the undersigned promised a prompt ruling on the motion to dismiss, and because the stay was sought only based upon the pendency of that motion, only the issues raised in the motion to dismiss were argued at the hearing.

[3] NUTECH expressly states that MIMEDX 's causes of action other than for patent infringement "are not the subject of this motion to dismiss." (Motion, doc. 23 at 5, fn1).

1. A method for permitting direct, visual determination of the orientation of a placental tissue graft by user, wherein the placental tissue graft has a first side and a second side, said method comprising: placing an asymmetric label on a portion of at least one side of said tissue graft, which label visibly distinguishes one side from the other side, thereby permitting direct, visual determination of the orientation for application of said tissue graft; and ascertaining the orientation of the placental tissue graft by direct visual determination.

Dependent claims 2-4 are directed to different types of labels: "an embossment" (Claim 2); "a raised or indented texture" (Claim 3) and "a logo, a design, a name or text" (Claim 4). Dependent claim 5 is directed to a tissue graft with "multiple tissue layers" (Claim 5). Dependent claims 6 and 7 require the claimed label to visibly distinguish each side of the placental tissue graft: "a basement side" (Claim 6); and "a stromal side" (Claim 7).

**B. The '494 Patent.**

The '494 Patent, which shares the same disclosure as the '687 patent,[4] is entitled "Placental Tissue Grafts" and has ten claims. Of these, Claims 1, 6, 9, and 10 are independent.

Claim 1 of the '494 patent states:

A dehydrated, laminated tissue graft consisting essentially of one or more washed and/or substantially cleaned amnion layers and one or more washed and/or substantially cleaned chorion layers, wherein at least one of the amnion layers contains its fibroblast cell layer, and

---

[4] The '494 Patent issued from a continuation application of the '687 Patent.

further wherein the amnion layer and the chorion layer are directly laminated to each other.

Claims 2-5 depend on Claim 1. Claim 2 has the additional requirement that the claimed layers are "dehydrated together in a drying fixture." Claim 3 requires the amnion and chorion layers to be "treated with an antibiotic prior to lamination." Claim 4 requires the tissue graft to be "exposed to sterilizing conditions." Claim 5 requires "one amnion layer and one chorion layer."

Independent claim 6 requires "one or more amnion layers" and "one or more chorion layers" that have been separated, cleaned, and processed:

> A dehydrated, laminated tissue graft, wherein the tissue graft consists essentially of one or more amnion layers and one or more chorion layers wherein each of the amnion and chorion layers: are separated from a placenta to provide separate layers of amnion and chorion, washed and substantially cleaned without removal of the fibroblast cell layer from the amnion layer, and are layered directly over each other and are laminated and heat dehydrated together to provide the dehydrated, laminated tissue graft.

Claims 7 and 8 depend on Claim 6. Claim 7 requires "one amnion layer and one chorion layer." Claim 8 requires the amnion and chorion layers to be "chemically decontaminated."

Independent claim 9 requires the amnion layer to retain its epithelial cellular layer, but otherwise is similar to Claim 1:

> A dehydrated, laminated, placental tissue graft which is a laminate

4

comprising two or more separated and washed layers which layers are
selected from amnion and/or chorion wherein the layers are directly
laminated to each other and at least one of said layers is an amnion
layer which retains an epithelial cellular layer.

Independent claim 10 is also similar to claim 1, except that it uses the more

open-ended "comprising" language instead of "consisting essentially of" language

found in claim 1:

A dehydrated, laminated, placental tissue graft which is a laminate
comprising two or more separated and washed layers which layers are
selected from amnion and/or chorion wherein the layers are directly
laminated to each other and at least one of said layers is an amnion
layer which retains a fibroblast cellular layer.

## II. LEGAL STANDARD[5]

For a complaint to survive dismissal pursuant to Federal Rule of Civil

Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim

---

[5] NUTECH clearly and appropriately relies on *Iqbal* and *Twombly* in advising the court of
the legal standard applicable to its motion to dismiss. (*See* Motion, doc. 23 at 11). In contrast,
MIMEDX relies entirely (and implausibly) on pre-*Twombly* decisions of the Eleventh Circuit and
one pre-*Twombly* decision of a judge of this district in setting out the legal standard applicable to
motions to dismiss. (*See* Opposition Brief, doc. 37 at 14-15, citing *Brooks v. Blue Cross & Blue
Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997). *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th
Cir. 1993), *Carmichael v. Personnel Board of Jefferson County*, No. 05-B-2371, 2006 U.S. Dist.
LEXIS 96990, at *2 (N.D. Al. Sept. 26, 2006), and *Beck v. Deloitte & Touche*, 144 F.3d 732,
735-36 (11th Cir. 1998)).

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable factual inferences in favor of the nonmoving party. (*Twombly*, 550 U.S. at 555 and fn.3) However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The grant or denial of a motion to dismiss for failure to state a claim is not a matter unique to patent law and accordingly is reviewed under the applicable law of the regional circuit. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed.Cir.2012). Neither party has pointed out, and the undersigned has not located, any patent-specific rule adopted by the Eleventh Circuit in reviewing motions to dismiss.

NUTECH asserts, and MIMEDX does not dispute, that

To decide this motion to dismiss, the Court must consider: (1) the complaint; (2) the exhibits attached to the complaint; (3) matters of public record; and (4) undisputably authentic documents if the plaintiff's claims are based on these documents. The court may also take judicial notice of relevant public documents and records, such as

6

the file histories of the asserted patents.

(Motion, doc. 23 at 11)(citations omitted).

## III. ANALYSIS

MIMEDX argues that the motion is premature, in that claim construction

has not yet occurred. Further, the parties disagree as to whether or not NUTECH

must prove that dismissal is proper by "clear and convincing evidence." Finally,

the parties disagree as to whether or not the patents at issue are directed to non-

patentable subject matter and thus are invalid unless an inventive concept has been

added, sufficient to transform non-patentable subject matter to an invention and,

finally, whether or not such "transformation" is set out in each patent. The court

will address these issues in the order set out above.

### A. The Motion Is Not Premature.

MIMEDX argues that NUTECH's motion is premature, as claim

construction has not yet occurred. (Opposition Brief, doc. 37 at 15-16; 29-30;

Response to Notice of Supplemental Authority, doc. 55 at 8-9). MIMEDX relies

primarily on *Bancorp Servs. LLC v. Sun Life Assur. Co. of Canada (US)*, 687 F.3d

1266, 1273 (Fed. Cir. 2012) in support of this argument. (*Id*.). MIMEDX does

concede that "courts have been willing to dismiss claims under § 101 [for lack of

subject matter validity] without performing a claim construction analysis, [but

argues that] in cases such as this, *where parties clearly dispute the appropriate meaning for a central term*, courts have declined to rule on Rule 12 motions prior to engaging in claim construction." (*Id.*)(emphasis supplied). However, nowhere does MIMEDX tell the court what "dispute" actually exists as to any term of either patent.[6]

Unhelpfully, what MIMEDX does say conflates the question of law which this court must decide - do the claims of the respective patents fail as claiming non-patentable subject matter - with "facts" (*e.g.* "terms") that are in dispute (*e.g.*, must be "construed"). MIMEDX says:

> NuTech's motion is premature because it calls into question issues that will be resolved by the Court during claim construction. As such, it should be denied.
>
> It is "ordinarily desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis." *Bancorp*, 687 F.3d at 1273. This is particularly so in this case because the parties will likely dispute at least the meaning of the "laminated" claim term of the '494 patent. Specifically, NuTech argues that because the amnion of the claimed invention of the '494 patent retains its fibroblast layer, the amnion is "laminated" and in its "natural state in the human body." Thus, NuTech implicitly argues that amnion and chorion layers are "laminated" if the "fibroblasts have not been removed." Such a construction is not proper. As used in the context

---

[6] MIMEDX does state that "the parties will <u>likely</u> dispute at least the meaning of the 'laminated' claim term of the '494 patent." (Opposition Brief, doc. 37 at 29) (emphasis supplied by court). However, at oral argument, NUTECH clearly stated that, for purposes of the motion to dismiss, it was <u>not</u> disputing MIMEDX's construction of "laminated" as meaning "adhered," and no other claim terms are identified by MIMEDX as "likely dispute[d]." Further, MIMEDX does not even identify a "likely" disputed term as to the '687 Patent.

of the '494 patent, the term "laminated" does not hinge on the existence of the fibroblast layer. Rather, "laminated" requires that the amnion/chorion layers are adhered together. *Because a claim construction dispute exists*, NuTech's motion should not be granted.

(Opposition Brief, doc. 37 at 29-30)(emphasis supplied)(internal citations omitted).

MIMEDX also states:

Unlike *Tranxition*, in which "the parties [did not] raise[] any factual disputes" for the Court to resolve, NuTech's Motion to Dismiss is ripe [*sic*] with factual disputes, even on this limited record. For example, as a threshold matter, the Court must determine if the claimed "dehydrated, laminated, placental tissue graft[s]" are found in nature. Additionally, NuTech's Motion to Dismiss raises other factual disputes, including but not limited to: (1) whether the elements in the claims of the '494 patent describe a new and useful composition of matter; (2) whether the combination of elements in claims of the '494 patent embody an "inventive concept"; and (3) whether the claimed amnion and the chorion layers dervied [*sic*] from natural placenta are "separated," "washed," and then "directly laminated" to one another? And, the disputed issues do not end here.

As such, in view of the plethora of factual disputes presented by NuTech's Motion to Dismiss, Defendants must prove invalidity by clear and convincing evidence.[7]

(Response to Notice, doc. 55 at 8-9)(some alterations in original)(internal citations omitted).

As NUTECH does not, for purposes of this motion, dispute the meaning of

---

[7] Here, MIMEDX additionally conflates the issues of (i) the standard applicable to a subject matter challenge to a patent with (ii) term construction.

any claim terms, and specifically does not dispute the construction of "laminated" as used in the '494 Patent as meaning "adhered," the court finds that the motion is not premature.

### B. Nutech's 12(b)(6) Burden Is Not Heightened.

MIMEDX asserts that its patents are "presumed valid" and thus NUTECH bears the "high burden" of showing invalidity by "clear and convincing evidence." (*See* Opposition Brief, doc. 37, at 15; *see also*, Response to Notice, doc. 55 at 8-9.) NUTECH responds that such a presumption and burden do not apply where there is no factual issue to be decided. The court finds that such a presumption and burden have no impact in this case as there is no fact, but only a question of law, to be determined, in light of the applicable legal standard governing motions to dismiss brought under Rule 12(b)(6) for failure to state a claim.[8] Thus, the sole issue for this court to decide is whether or not, considering the claims in MIMEDX's complaint in the manner most favorable to MIMEDX, and construing all terms of the patents in the manner proposed by MIMEDX, is MIMEDX's complaint due to be dismissed for invalidity of its patents under 35 U.S.C. § 101?

---

[8] *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014) (*Ultramercial III*) *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015) ("We review questions concerning patent-eligible subject matter under 35 U.S.C. § 101 without deference. *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 867 (Fed.Cir.2010).").

10

### C. Patentable Subject Matter.

Patent-eligible subject matter is defined in Section 101 of the Patent Act:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. In choosing such expansive terms "modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980).

Yet, while the scope of Section 101 is broad, the Supreme Court has long recognized that there is an "important implicit exception [to it]: [l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (internal quotation marks and citation omitted); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, [because] they are the basic tools of scientific and technological work." *Mayo*, 132 S. Ct. at 1293 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

The Supreme Court has also recognized, however, that "too broad an interpretation of this exclusionary principle could eviscerate patent law." *Id.*; *see*

11

*also Alice*, 134 S. Ct. at 2354. This is because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 132 S. Ct. at 1293; *see also Alice*, 134 S. Ct. at 2354. To that end, it has explained that "an *application* of a law of nature, [natural phenomena or abstract idea] to a known structure or process may well be deserving of patent protection." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981) (emphasis in original).

In terms of the process used to analyze patent eligibility under Section 101, the Federal Circuit has explained that a court should first identify whether the claimed invention fits within one of the four statutory classes set out in the statute: processes, machines, manufactures, and compositions of matter. *Ultramercial III*, 772 F.3d at 713-14. The court must then assess whether any of the judicially recognizable exceptions to subject matter eligibility apply. *Ultramercial III*, 772 F.3d at 714. NUTECH has challenged both patents as ineligible under Section 101 as claiming natural phenomena.

In *Alice*, the Supreme Court confirmed the framework to be used in order to distinguish patents that claim patent-ineligible concepts, including natural phenomena, from those that claim patent-eligible applications of those concepts:

First, we determine whether the claims at issue are directed to one of

those patent-ineligible concepts.... If so, we then ask, "[w]hat else is
there in the claims before us?" ... To answer that question, we
consider the elements of each claim both individually and "as an
ordered combination" to determine whether the additional elements
"transform the nature of the claim" into a patent-eligible application.
... We have described step two of this analysis as a search for an "
'inventive concept' "—i.e., an element or combination of elements
that is "sufficient to ensure that the patent in practice amounts to
significantly more than a patent upon the [ineligible concept] itself."

*Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294-98) (citations omitted;

alterations in original). Since *Alice*, the Federal Circuit has recognized that

"[d]istinguishing between claims that recite a patent-eligible invention and claims

that add too little to a patent-ineligible ... concept can be difficult, as the line

separating the two is not always clear." *DDR Holdings, LLC v. Hotels.com, L.P.*,

773 F.3d 1245, 1255 (Fed. Cir. 2014).

**D. The '687 Patent**

The '687 Patent is a method patent. Thus, it is a "process," and falls within

one of the four statutory classes set out in the Patent Act. The court therefore turns

to step one of *Mayo* to determine whether or not the claims of the ''687 Patent are

directed to a patent-ineligible concept (step one). If not, the court's analysis ends,

and the motion to dismiss is due to be denied. If the claims are so directed, the

court must determined whether the patent claims add enough to constitute a

patent-eligible invention (step two of *Mayo*). If the answer at step two is "yes,"

then the motion is due to be denied. If the answer at step two is "no," then the

motion is due to be granted. In making these determinations, the court will look to

each claim both individually and as a composite. *See Diehr*, *supra*, at 188, 101

S.Ct. 1048 ("[A] new combination of steps in a process may be patentable even

though all the constituents of the combination were well known and in common

use before the combination was made").

      1. Claim 1

What is claimed is:
      1. A method for permitting direct, visual determination of the
orientation of a placental tissue graft by user, wherein the placental
tissue graft has a first side and a second side, said method comprising:
placing an asymmetric label on a portion of at least one side of said
tissue graft, which label visibly distinguishes one side from the other
side, thereby permitting direct, visual determination of the orientation
for application of said tissue graft; and ascertaining the orientation of
the placental tissue graft by direct visual determination.

Applying step one of *Mayo*, the court determines that Claim 1 is "directed

to" a natural phenomenon, *i.e.*, placental tissue. Accordingly, the court turns to

step two of *Mayo*. The court finds that Claim 1 sets out a process—adding an

asymmetrical label—that is "novel and useful"[9] and that causes the placental tissue

to be physically "transformed" from such tissue as it exists in nature. Accordingly,

---

[9] *See Parker v. Flook*, 437 U.S. 584, 591, 98 S. Ct. 2522, 2526, 57 L. Ed. 2d 451
(1978).

under *Mayo* step two, the court finds that Claim 1 adds enough to constitute a patent-eligible invention and NUTECH's motion to dismiss is due to be denied as to Claim 1.

### 2. Claims 2-7

Because all of the remaining claims of the '687 Patent depend on the method of Claim 1, the court finds that the same analysis of *Mayo*'s steps one and two result in the same decision regarding these claims as well. Accordingly, NUTECH's motion to dismiss is due to be denied as to all of the claims of the '687 Patent.

### E. The '494 Patent

The '494 Patent is also a "method" patent and, accordingly, falls within one of the four statutory classes set out in the Patent Act. The court therefore turns to step one of *Mayo* to determine whether or not the claims of the '494 Patent are directed to a patent-ineligible concept (step one). If not, the court's analysis ends, and the motion to dismiss is due to be denied. If the claims are so directed, the court must determined whether the patent claims add enough to constitute a patent-eligible invention (step two of *Mayo*). If the answer at step two is "yes," then the motion is due to be denied. If the answer at step two is "no," then the motion is due to be granted. In making these determinations, the court will look to

15

each claim both individually and as a composite.

        1. <u>Claim 1</u>

What is claimed is:
        1. A dehydrated, laminated tissue graft consisting essentially of one or more washed and/or substantially cleaned amnion layers and one or more washed and/or substantially cleaned chorion layers wherein at least one of the amnion layers contains its fibroblast cell layer, and further wherein the amnion layer and the chorion layer are directly laminated to each other.

Applying step one of *Mayo*, the court determines that Claim 1 is "directed to" a natural phenomenon, *i.e.*, placental tissue. Accordingly, the court turns to step two of *Mayo*. The parties agree that placental tissue as it occurs in nature has both an amnion layer and a chorion layer, and that the amnion layer contains a fibroblast cell layer. Merely cutting that tissue into pieces to be used as a graft is, as stated in the patent application itself, not "novel" and therefore, without more, does not "transform" that naturally occurring tissue into a patent-eligible invention. Further, the undersigned agrees that separating the layers, washing or otherwise cleaning them, and/or dehydrating them, are not "novel" and accordingly do not "transform" the naturally occurring tissue into a patent-eligible invention. However, giving the term "directly laminated to each other" the meaning—"directly adhered to each other"—ascribed to that term by MIMEDX, the court finds that Claim 1 sets out a method that is "novel and useful" and that

"transforms" the naturally occurring tissue into a patent-eligible invention.

Accordingly, NUTECH's motion to dismiss is due to be denied as to Claim 1.

### 2. Claims 2-5

Claims 2 through 5 carry forward the "directly laminated to each other"

term that causes Claim 1 to set out a method that is "novel and useful" and that

"transforms" the naturally occurring tissue into a patent-eligible invention.

Accordingly, NUTECH's motion to dismiss is due to be denied as to these claims

as well.

### 3. Claim 6

What is claimed is:
   6. A dehydrated, laminated tissue graft, wherein the tissue graft
consists essentially of one or more amnion layers and one or more
chorion layers wherein each of the amnion and chorion layers:
      are separated from a placenta to provide separate layers of
amnion and chorion,
      washed and substantially cleaned without removal of the
fibroblast cell layer from the amnion layer, and
      are layered directly over each other and are laminated and heat
dehydrated together to provide the dehydrated, laminated tissue graft.

Again recognizing that the parties agree that placental tissue as it occurs in nature

has both an amnion layer and a chorion layer, and that the amnion layer contains a

fibroblast cell layer, the court finds that separating the layers from the placenta and

from each other, washing or otherwise cleaning them, layering them directly over

17

each other and laminating and heat dehydrating them, are not steps that are "novel" and accordingly the method described in this claim does not "transform" the naturally occurring tissue into a patent-eligible invention. Accordingly, the court finds that NUTECH's motion to dismiss is due to be granted as to this claim.

### 4. Claims 7-8

These claims depend on Claim 6. The court finds nothing in Claim 7 or Claim 8, either alone or as a composite whole (including Claim 6) that is "novel" so as to "transform" the naturally occurring placental tissue into a patent-eligible invention. Accordingly, the court finds that NUTECH's motion to dismiss is due to be granted as to these claims.

### 5. Claim 9

What is claimed is:
9. A dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains an epithelial cellular layer.

This claim contains the "directly laminated to each other" term that the court found "novel and useful" and transformative in analyzing Claim 1. The court finds no reason to depart from that analysis. Consistent therewith, the court finds that NUTECH's motion to dismiss is due to be denied as to this claim.

18

6. <u>Claim 10</u>

What is claimed is:
10. A dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains a fibroblast cellular layer.

This claim contains the "directly laminated to each other" term that the court found "novel and useful" and transformative in analyzing Claim 1. The court finds no reason to depart from that analysis. Consistent therewith, the court finds that NUTECH's motion to dismiss is due to be denied as to this claim.

**IV. ORDER**

Consistent with the foregoing analysis, NUTECH's Motion To Dismiss is hereby **GRANTED** as to all claims that NUTECH infringed Claims 6, 7, and 8 of the '494 Patent. In all other respects, such motion is **DENIED**. Further, NUTECH's Motion To Stay Discovery and Rule 26 Obligations is hereby **DENIED**. The parties shall comply with Rule 26 within twenty days of the entry of this Memorandum Opinion and Order.

**DONE** this the 24th day of November, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge