# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MIMEDX GROUP, INC.,** | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) Case No.: 2:15-CV-0369-VEH |
| | ) |
| **NUTECH MEDICAL, INC.** | ) |
| | ) |
| Defendant, | ) |
| | ) |
| **DCI DONOR SERVICES, INC.,** | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

## **CLAIM CONSTRUCTION ORDER**[1]

Plaintiff MiMedx Group, Inc. ("MIMEDX") brings this patent infringement action against Nutech Medical, Inc. ("NUTECH") and DCI Donor Services, Inc. ("DCI").[2] A *Markman* hearing was held on October 27, 2016. The Court now construes the patent claims as set out herein.

### **I. THE TECHNOLOGY**

The patent at issue concerns MIMEDX's product line of tissue grafts processed

---

[1] All references to page numbers of documents filed with the court are to the pagination assigned by the court's electronic filing system.

[2] MIMEDX alleged infringement of two patents. However, due to intervening actions by the United States Patent Office and by this Court, only claims 1-5, 9, and 10 of the U.S. Patent No. 8,709,494 ("the '494 Patent") are before this Court for construction.

from human amniotic membrane derived from donated placentas. Defendants previously challenged Plaintiff's '494 Patent, which is directed to non-patentable subject matter (human placental tissue), as invalid for lack of the addition of an inventive concept sufficient to transform that non-patentable subject matter to an invention. This Court's Memorandum Opinion and Order (Doc. 64) granted Defendants' motion to dismiss only in part. While the parties agreed that placental tissue as it occurs in nature has both an amnion layer and a chorion layer, and that the amnion layer contains a fibroblast cell layer, this Court found that:

> merely cutting that tissue into pieces to be used as a graft is, as stated in the patent application itself, not "novel" and therefore, without more, does not "transform" that naturally occurring tissue into a patent-eligible invention. Further, the undersigned agreed that separating the layers, washing or otherwise cleaning them, and/or dehydrating them, are not "novel" and accordingly do not "transform" the naturally occurring tissue into a patent-eligible invention. However, giving the term "directly laminated to each other" the meaning—"directly adhered to each other"—ascribed to that term by MIMEDX, the court finds that Claim 1 sets out a method that is "novel and useful" and that "transforms" the naturally occurring tissue into a patent-eligible invention.[3]

(*Id*. at 17).

## II. APPLICABLE LAW

Patent claim construction is a matter of law. *Markman v. Westview Instruments,*

---

[3] Defendants did not dispute, for purposes of such ruling, Plaintiff's construction of the term "directly laminated." They now dispute that construction.

*Inc.*, 517 U.S. 370, 391 (1996).

> Patent claim language defines the scope of the invention. As a general rule, claim language carries the meaning of the words in their normal usage in the field of the invention. In other words, a claim term means "what one of ordinary skill in the art at the time of the invention would have understood the term to mean." Nevertheless, inventors may act as their own lexicographers and use the specification to supply implicitly or explicitly new meanings for claim terms. Thus, to help determine the proper construction of a patent claim, a construing court consults the written description and the prosecution history. While claims often receive their interpretative context from the specification and the prosecution history, courts may not read limitations into the claims. "This court has repeatedly and clearly held that it will not read unstated limitations into claim language."

*Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1088–89 (Fed. Cir. 2003) (internal citations and parentheticals omitted).

"Because the inquiry into the meaning of claim terms is an objective one, a patentee who notifies the public that claim terms are to be limited beyond their ordinary meaning to one of skill in the art will be bound by that notification, even where it may have been unintended." *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116–17 (Fed. Cir. 2004).

Where the parties present a fundamental dispute regarding the scope of a claim term, it is the Court's duty to resolve that dispute. *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). In claim construction, courts first examine the intrinsic evidence, which includes the claims, the

specification, and the prosecution history, if in evidence. *See Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 966 (Fed. Cir. 2000). The specification is always relevant to the claim construction analysis, usually dispositive, and the single best guide to the meaning of a disputed term. *Phillips*, 415 F.3d at 1315. The prosecution history is less helpful than the specification and claims because it represents the ongoing negotiation between the PTO and the patentee. *Id*. at 1317. However, the prosecution history is helpful when it demonstrates how the inventor understood the invention or shows that the inventor limited the invention in the course of prosecution. *Id*. Extrinsic evidence is generally less significant than the intrinsic record. *Id*.

### III. CONSTRUCTION OF CLAIM TERMS[4]

The parties' agreed and disputed claim terms appear in Claims 1, 9, and 10. The specification for each of those Claims, respectively, is set out below.

The specification of Claim 1 reads:

> A dehydrated, laminated tissue graft consisting essentially of one or more washed and/or substantially cleaned amnion layers and one or more washed and/or substantially cleaned chorion layers, wherein at least one of the amnion layers contains its fibroblast cell layer, and

---

[4] While claim construction is a matter of law, and courts are not required to accept the parties' construction, *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995), generally, parties are held to have waived their right to object to a district court construction that they agreed to before the district court. *See Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 852 (Fed. Cir. 1999) (Bryson, J., concurring).

further wherein the amnion layer and the chorion layer are directly laminated to each other.

Independent Claim 9 requires the amnion layer to retain its epithelial cellular layer, but otherwise is similar to Claim 1. The specification of Claim 9 reads:

A dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains an epithelial cellular layer.

Independent Claim 10 is also similar to Claim 1, except that it uses the more open-ended "comprising" language instead of "consisting essentially of" language found in Claim 1. The specification of Claim 10 reads:

A dehydrated, laminated, placental tissue graft which is a laminate comprising two or more separated and washed layers which layers are selected from amnion and/or chorion wherein the layers are directly laminated to each other and at least one of said layers is an amnion layer which retains a fibroblast cellular layer.

**First and Second Terms Construed: "Washed" (Claims 1, 9, 10) and "Washed and/or Substantially Cleaned" (Claim 1)**

The parties have agreed that the terms "washed and/or substantially cleaned" (Claim 1) and "washed" (Claims 1, 9, 10) mean "cleaned such that substantially all blood clots and intermediate 'spongy' tissue between the amnion and chorion are removed." Having read the parties' briefs and had the benefit of oral argument, and having addressed these patent claims in ruling on Defendants' Motion To Dismiss,

5

the Court accepts this construction of these terms.

### Third Term Construed: "Directly Laminated" (Claims 1, 9, 10)

The parties are in dispute about the terms: (1) "wherein the amnion layer and the chorion layer are directly laminated to each other" (Claim 1); and (2) "wherein the layers are directly laminated to each other" (Claims 9, 10). The parties agree that these disputes concern the phrase "directly laminated," but that laminated should be given its ordinary meaning. In other words, what does the term "directly" mean when the claim specification uses the phrase "directly laminated"? The parties further agree that the claims specifications give little guidance. Both maintain that the prosecution history supports their opposing constructions.

The Plaintiff proposes that the phrase "directly laminated" should be given the construction "are directly united by adhesive or other means." (Doc. 83 at 10). The Plaintiff says that the "apparent point of dispute between the parties concerns the amount of spongy or intermediate tissue that may remain in the final tissue graft. (*Id*.) (emphasis supplied). The Court agrees that this is the point of dispute.

The Plaintiff argues that its construction, which only requires "direct union" of "substantially all" of amnion and chorion layers of tissue that have been removed from native placental tissue, washed and/or substantially cleaned, and separated from material otherwise present in native placental tissue (such as blood clots and

intermediate "spongy" tissue") is consistent with the prosecution history of both the '494 Patent and its "grandparent" '437 Patent, because that prosecution history shows that the Plaintiff's intent was to remove at least a portion of the naturally intermediate "spongy" layer. (*Id*. at 10-11). Thus, the Plaintiff argues, it was never the Plaintiff's intent to remove <u>all</u> of the spongy layer, merely "substantially all" of it. Specifically, the Plaintiff argues that its proposed construction is consistent with its demonstrated-in-the-prosecution-history intent that "remnants of spongy material may remain in between the laminated layers, even if the spongy layer had been removed." (Doc. 86 at 9). The Defendants argue that the prosecution history supports <u>their</u> construction that "directly" laminated means "with nothing in between."

 The Court agrees with the Plaintiff. The Plaintiff's construction is consistent with the context of Claim One, with the Patent as an entirety, and with the prosecution history. The Defendants' is not. The '494 Patent sets out a method to transform naturally occurring subject matter — human placental tissue — into tissue grafts. To create the grafts, the placental tissue is transformed from its native state by selecting, separating (from the totality of the placental tissue), washing, and directly uniting the amnion and chorion layers. The amnion layer and the chorion layer are then united directly to each other by some means. "Directly" is a word of limitation that evidences the transformation described by the Patent. Specifically, in native

placental tissue, the amnion and chorion layers are not next to each other because other material ("spongy/connective material") is found between them.

Even Defendants agree that they do not really mean "<u>nothing</u> in between." They agree that remnants of spongy tissue or blood clots can remain. (*See e.g.*, Doc. 85 at 15) ("The possibility of residue of removed tissue is specifically allowed in Defendants' proposed construction, which provides that 'substantially all' of the amnion and chorion will be directly adhered to each other. Where there is no residue, the layers are directly laminated. The residue is not addressed in the 'directly' element, it is addressed in the 'substantially all' element."). Thus, Defendant's proposed construction does not clarify the Claims and in fact is confusing. Is only part of the tissue graft — the part "[w]here there is no residue" — covered by the Patent? If so, that is a limitation that is not supported by the specification or the prosecution history. This Court will not allow such an unsupported limitation based on the arguments and evidence presented.

**Fourth Term Construed: "Separated" (Claims 1, 9, 10)**

The parties also dispute the construction of the term "separated." Plaintiff's proposed construction is that the term should have its plain and ordinary meaning. (Doc. 83 at 15-16; Doc. 86 at 6-7). Alternatively, Plaintiff argues that "separated" should be construed as "disjoined or disconnected so that the separated layers may

be washed and/or substantially cleaned." (Doc. 83 at 9 (Chart)). Defendants argue that the term should be construed to mean "completely disjoined or disconnected." (Doc. 85 at 23).

This Court agrees that the term "separated" needs no construction other than its plain and ordinary meaning. If, as Defendants' expert, Dr. Abshier, upon whom the Defendants rely for this argument, is correct that "complete separation of the layers is required in order to remove all, or substantially all of the blood clots and intermediate tissue that may be present" (Doc. 83 at 17) (quoting Abshier Dec. ¶ 58), Defendants' construction adds nothing. If Dr. Abshier is incorrect, then Defendants' construction has imported a limitation that is not supported by the claim, the specification, or the prosecution history. Either result is improper.

## Conclusion

Having now discharged its responsibility with respect to claim construction, the Court hereby **ORDERS** as follows:

No later than February 28, 2017, the parties shall confer and file with the court, with a copy emailed to chambers, a proposed amended scheduling order addressing such matters as discovery, expert reports, and dispositive motion deadlines.

**DONE** and **ORDERED** this the 26th day of January, 2017.

_/s/ VEHopkins_
**VIRGINIA EMERSON HOPKINS**
United States District Judge